IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSEPH MARPEL,

    Plaintiff,               No. 2:11-cv-0387 KJN P

    vs.

SAUKHLA, et al.,               ORDER and

    Defendants.          FINDINGS AND RECOMMENDATIONS

_____/

I. Introduction

      Plaintiff is a state prisoner, in the custody of the California Department of Corrections and Rehabilitation ("CDCR"), who is incarcerated at the California Medical Facility ("CMF"). Plaintiff proceeds without counsel, and in forma pauperis, in this action filed pursuant to 42 U.S.C. § 1983. On February 22, 2011, the court found that plaintiff's complaint appeared to state potentially cognizable claims against defendant physicians Dr. Saukhla and Dr. Bick. Dr. Saukhla served as plaintiff's primary care physician at CMF; Dr. Bick is the Chief Medical Officer ("CMO") at CMF. On June 24, 2011, the court denied plaintiff's motion for leave to file

////

////

////

1

an amended complaint,[1] and directed defendants to file a responsive pleading.  On July 25, 2011, defendants filed a motion to dismiss plaintiff's complaint, on the ground that it fails to state a cognizable claim against either defendant.  (Dkt. No. 24.)  Plaintiff timely filed an opposition (Dkt. No. 28)[2], and defendants filed a reply (Dkt. No. 29).  Thereafter, plaintiff filed a motion to submit additional medical records (Dkt. No. 33), which the court hereby grants.[3]  Discovery has been stayed in this action pending resolution of defendants' motion to dismiss.  (Dkt. No. 31.)  For the reasons that follow, this court recommends that defendants' motion be granted.

II. Legal Standards

    A.  Motion to Dismiss for Failure to State a Claim

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), challenges the sufficiency of the pleadings set forth in the complaint.  Vega v. JPMorgan Chase Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).  Under the "notice pleading" standard of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide a "short and plain statement" of plaintiff's claims showing entitlement to relief.  Fed. R. Civ. P. 8(a)(2); see also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009).  In order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554 (2007).  "A complaint may survive a motion to dismiss if, taking all well-pleaded factual allegations as

---

[1] The allegations of the proposed amended complaint failed to state any potentially cognizable claim against the defendant newly named therein.  (See Dkt. No. 23.)

[2] Plaintiff twice filed his opposition (Dkt. Nos. 27, 28), but only the second filing includes plaintiff's dated signature and proof of service.

[3] Although the Local Rules do not authorize the filing of a surreply, see Local Rule 230(l), defendants did not oppose plaintiff's motion to submit additional documents, and the court finds the newly submitted evidence relevant to the merits of the pending motion to dismiss.  See Fed. R. Evid. 201 (court may take judicial notice of facts that are capable of accurate determination by sources whose accuracy cannot reasonably be questioned).

true, it contains 'enough facts to state a claim to relief that is plausible on its face.'" <u>Coto Settlement v. Eisenberg</u>, 593 F.3d 1031, 1034 (9th Cir. 2010) (quoting <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" <u>Caviness v. Horizon Cmty. Learning Ctr., Inc.</u>, 590 F.3d 806, 812 (9th Cir. 2010) (quoting <u>Iqbal</u>, 129 S. Ct. at 1949). The court accepts "all facts alleged as true and construes them in the light most favorable to the plaintiff." <u>County of Santa Clara v. Astra USA, Inc.</u>, 588 F.3d 1237, 1241 n.1 (9th Cir. 2009). The court is "not, however, required to accept as true conclusory allegations that are contradicted by documents referred to in the complaint, and [the court does] not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." <u>Paulsen</u>, 559 F.3d at 1071 (citations and quotation marks omitted).

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." <u>Outdoor Media Group, Inc. v. City of Beaumont</u>, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted). However, under the "incorporation by reference" doctrine, a court may also review documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." <u>Knievel v. ESPN</u>, 393 F.3d 1068, 1076 (9th Cir. 2005) (citation omitted and modification in original). The incorporation by reference doctrine also applies "to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." <u>Id.</u>

////

////

B. <u>Eighth Amendment Claim</u>

Inadequate medical care does not constitute cruel and unusual punishment cognizable under § 1983, unless the mistreatment rose to the level of "deliberate indifference to serious medical needs." <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976). "In the Ninth Circuit, the test for deliberate indifference consists of two parts." <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006) (citations omitted). These parts are:

> First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. This second prong -- defendant's response to the need was deliberately indifferent -- is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.

<u>Id.</u> (citations and internal quotation marks omitted).

To establish deliberate indifference, a plaintiff must show that defendants knew of, and disregarded, an excessive risk to his health or safety. <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994). A prison official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Id.</u> The nature of a defendant's responses must be such that the defendant purposefully ignores or fails to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established. <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1060 (9th Cir. 1992), overruled in part on other grounds, <u>WMX Techs., Inc. v. Miller</u>, 104 F.3d 1133, 1136 (9th Cir. 1997). Deliberate indifference may occur when prison officials deny, delay, or intentionally interfere with medical treatment, or may be demonstrated by the way in which prison officials provide medical care. <u>Id.</u> at 1059–60.

A showing of merely inadvertent or even negligent medical care is not enough to

4

establish a constitutional violation. Estelle, 429 U.S. at 105–06; Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998). A mere difference of opinion concerning the appropriate treatment cannot be the basis for an Eighth Amendment violation. Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981). Rather, an inmate must allege facts sufficient to indicate a culpable state of mind on the part of prison officials. Wilson v. Seiter, 501 U.S. 294, 297–99 (1991). Accordingly, a difference of opinion about the proper course of treatment is not deliberate indifference nor does a dispute between a prisoner and prison officials over the necessity for or extent of medical treatment amount to a constitutional violation. See, e.g., Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

III. Discussion

    A. The Complaint

        The complaint alleges broadly that plaintiff "complained about pain" in his neck, back, and right shoulder since approximately December 2008, but that his primary care physician, Dr. Saukhla, "neglected" plaintiff's medical needs. However, the complaint further provides that plaintiff has been satisfied with his health care since Dr. Wills, rather than Dr. Saukhla, became plaintiff's primary care physician, in mid-2010; Dr. Wills' treatment included obtaining surgery for an injury to plaintiff's left shoulder. The narrative of the complaint states in full:

> I've been complaining about Pain in my neck, back, (R) shoulder since around Dec. 2008.
>
> I've had to file several 602 appeals in regards to the performance of my Primary, Care, Provider, Dr. Saukhla due to the fact that nothing was getting done[.] [T]o this day I'm still suffering the same injuries.
>
> My Primary Care Provider was changed to Dr. Wills approximately 6 months ago and although I'm still in pain things have changed.
>
> But; while I was with the previous Doctor nothing was happening And it's plain to see that Dr. Saukhla was Neglecting my health.

5

> If you look at the MRI results of my cervical spine you'll see the word stenosis (Bone spur) in my neck, that's ridiculous this should have been taken care of along time ago. , And the same go'es for my right shoulder, I have a tear that should have been fixed along time ago, but; still Nothing.
>
> In the 6-7 months I've been with Dr. Wills, I've had an injury and a sergury on my L-shoulder than makes sense.

(Dkt. No. 1 at 4 (sic).)  Plaintiff seeks "adequate medical treatment," and compensatory and punitive damages totaling one million dollars.  (Id. at 3.)

        Documents attached to the complaint, and submitted in support of plaintiff's opposition to the pending motion, reveal that plaintiff initiated several pertinent administrative appeals, but exhausted only one.  In his unexhausted appeals, plaintiff sought, in April, May and June 2009, treatment for alleged pain in his back, left leg, right shoulder, and neck; for alleged cramping in his right shoulder; and for alleged numbness in his legs and right hand; in addition, plaintiff requested that he be assigned a primary care physician other than Dr. Saukhla.[4]

---

[4] In his unexhausted appeals, plaintiff sought the following:

(1) that plaintiff receive treatment for his alleged back and left leg pain, and for numbness in his legs and right hand (Log. No. 09-10812, submitted April 16, 2009; granted at the Second Level Review by defendant Bick);

(2) that plaintiff be assigned a primary care provider other than Dr. Saukhla, who allegedly was ignoring plaintiff's complaints of pain and cramping in his right shoulder, pain in his neck and back, and numbness in his right hand (Log No. 09-11063, submitted May 22, 2009; not pursued after First Level denial);

(3) that plaintiff be assigned "a new Doctor that will address my issues," of right shoulder cramping and pain (Log No. 09-11163, submitted June 8, 2009; partially granted at First Level review, based on finding that Dr. Saukhla was providing appropriate care); and

(4) that plaintiff be assigned a primary care provider other than Dr. Saukhla, who allegedly was ignoring plaintiff's complaints of pain in his neck, lower back and right shoulder, right shoulder cramping, and numbness in plaintiff's right hand and legs (Log No. 09-11202, submitted June 12, 2009; not pursued after First Level denial).

1    Pursuant to his only fully exhausted appeal (Log No. 10-10637, submitted March
2 22, 2010, exhausted on September 9, 2010), plaintiff alleged that "CDCR, CMF, and Dr. Saukhla
3 are neglecting my right to Health Care." (Dkt. No. 1 at 7.) Plaintiff explained:

> I've been complaining about serious pain in my Neck, Back,
> Shoulder, and Cramping in my Legs for over a year. Physical
> Therapy was ordered around July or August 2009. I started
> Therapy 4 months later here at CMF. I had 2 weeks of therapy for
> my back and was transfered to Atascadero State Hospital (ASH) on
> or about December 17. I returned from ASH 20 days later Dec 27
> and now I'm being told I have to wait all over again. These
> conditions should have been fixed or reversed by now, but, instead
> I live in constant agony. I've been waiting for something to be
> done for so long that I'm used to the pain. There are days that it's
> impossible to walk, I end up dragging my right leg. And I don't
> remember the last time I've slept all night.

(Id. (internal paragraphs omitted) (sic).) Plaintiff sought "immediate comprehensive screening and diagnosis of all injuries," "immediate treatment of all injuries," and "punitive damages in the amount of $1,000,000.00." (Id. at 5.)

In requesting Second Level Review, on June 11, 2010, plaintiff explained (id. at 6):

> One Problem is that I've been waiting 18 months to get to this
> point. The MRI for my Right shoulder and the results was in my
> chart last week when I saw Dr. Wills and he tells me I need
> surgery. But he won't set me up for it until I finish the PT and
> MRI for my left shoulder. So I have to wait again.

In requesting a Third Level Review, on July 24, 2010, plaintiff explained (id.):

> I'm still not satisfied. To this day I haven't seen anyone about my
> neck. Dr. Will[5] told me to prioritize my pain, i.e. Asking me what
> part of your body do you need fixed first. Everything needs to get
> fix[ed] and I've been waiting approximately 20 months.

---

 This summary does not include initial appeals that were returned without consideration on the merits because deemed incomplete at the outset.

 [5] "Dr. Wills" is referred interchangeably by plaintiff as "Wills" and "Will;" the court relies on both references to refer to the same physician, defendant herein.

7

The appeal was denied at the Director's Level Review, pursuant to a review by licensed clinical staff of plaintiff's appeal file and health records, and a finding that plaintiff had received all medical treatment deemed medically necessary to date,[6] including pain medication, and that additional diagnostic testing was pending. (Id. at 15-6.)

Medical records attached to these several appeals include MRI reports of

---

[6] At the Director's Level Review, plaintiff's pertinent medical history was summarized as follows (Dkt. No. 1 at 15-6):

> The First Level Response (FLR) stated your appeal was partially granted and indicated you were examined and evaluated using Magnetic Resonance Imaging (MRI) scan results of your cervical spine, but Dr. Burch, Spine Surgeon, at the University of California, San Francisco, on August 4, 2009. Dr. Burch had no recommendation at that time, and your Primary Care Provider (PCP) referred you to Physical Therapy (PT). PT was terminated because of shoulder pain. You were transferred to Avenal State Prison (ASP) in December 2009, and returned to the California Medical Facility (CMF) on January 28, 2010. You were referred back to PT on February 16, 2010, by your PCP, and then reevaluated on April 22, 2010. You were given home exercises and recommended for a Transcutaneous Electronic Nerve Stimulation (TENS) unit. You were discharged on May 6, 2010, with leg pain. You were advised by your PCP to continue pain medication regimen while waiting for Dr. Burch's recommendation. You had an MRI scan of the right shoulder on April 29, 2010. You were seen in follow-up on May 19, and June 2, 2010, and provided non-steroidal anti-inflammatory drug (NSAID), Ibuprofen, Tylenol #3, and Gabapentin. You were to continue active continued evaluation, diagnostic exams, and treatment.
>
> . . . The Second Level Response (SLR) stated your appeal was partially granted and indicated you had received a stepwise workup for your right shoulder. You submitted a CDC 7362, Health Care Services Request form, on May 12, 2010, complaining of left shoulder pain for 3-4 days after performing push ups and overhead press exercises a week prior. On the same day of your CDC 7362, you were seen in urgent care, and an x-ray of your left shoulder was ordered and completed. The x-ray impression stated, "No osseous abnormalities identified." You were seen by your PCP for follow-up of your left shoulder on May 19, June 2, and 22, 2010. On June 22, 2010, he requested physical therapy and MRI of your left shoulder. In addition, he submitted an RFS for orthopedic consultation for both your shoulders.

1  plaintiff's cervical and lumbrosacral spine (conducted in June and August 2009); MRI reports of
2  plaintiff's right and left shoulders (conducted in May and July 2010, respectively); an EMG
3  conducted in May 2009; and consultation with a spine surgeon (Dr. Burch) in August 2009.
4  Plaintiff's newly submitted medical records indicate that plaintiff had a course of physical
5  therapy commencing in July 2011; a neurosurgical examination in May 2011; and MRIs of his
6  right shoulder and neck in September 2011.

       Defendants move to dismiss plaintiff's complaint, on the ground that it fails to state a cognizable claim against either defendant.

       B.  <u>Defendant Saukhla</u>

       In opposition to defendants' pending motion, plaintiff contends that he had an argument with Dr. Saukhla on June 11, 2009, and "after that defendant did as little as possible for petitioner (sic)." Dkt. No. 28 at 2. Plaintiff asserts that Dr. Saukhla "never ordered physical therapy for [plaintiff's] neck," despite a June 2009 MRI that showed "stenosis (Bone Spur)" in plaintiff's cervical spine; and failed to obtain a timely MRI of plaintiff's shoulders after Dr. Burch made the recommendation in August 2009. (Dkt. No. 28 at 1-2.) These assertions are not supported by the available record. The Director's Level Response to plaintiff's exhausted appeal indicates that plaintiff obtained physical therapy in February, April and June 2010; plaintiff's newly submitted medical records indicate that plaintiff had another course of physical therapy in July 2011. While it is not clear whether these courses of physical therapy included treatment for plaintiff's neck, plaintiff certainly had the opportunity to discuss his neck symptoms with a physical therapist. Similarly, plaintiff received several MRIs, including of both shoulders. The Director's Level Response to plaintiff's exhausted appeal indicates that plaintiff had MRIs in June 2009 (neck), April 2010 (right shoulder), and June 2010 (left shoulder), while plaintiff's newly submitted records indicate that he obtained MRIs of his right shoulder and neck in September 2011.

       Thus, despite a liberal construction of plaintiff's allegations against Dr. Saukhla,

based on plaintiff's complaint and all supporting documents, as well as the allegations of plaintiff's opposition, the court finds that plaintiff has failed to state a cognizable Eighth Amendment claim against Dr. Saukhla for deliberate indifference to plaintiff's serious medical needs. Plaintiff has not sufficiently alleged or demonstrated that his medical needs were so significant at the time he was treated by Dr. Saukhla that the physician's alleged failure to provide plaintiff the treatment he requested resulted in the "unnecessary and wanton infliction of pain," or "further significant injury" to plaintiff. See Jett, supra, 439 F.3d at 1096. Even if existing facts were so construed, plaintiff has failed to allege facts from which to reasonably infer that Dr. Saukhla purposefully denied plaintiff care which was clearly indicated. Plaintiff's general allegations of significant harm are further undermined by his assertion that "things changed" for the better when Dr. Wills became his primary care physician.

  Therefore, the court recommends that defendants' motion to dismiss plaintiff's complaint, as to defendant Saukhla, be granted.

  C. Defendant Bick

  Defendants correctly note that the complaint contains no factual allegations against Dr. Bick. In opposition to defendants' motion to dismiss, plaintiff states only that he is suing Dr. Bick because he "is in charge of making sure that the doctors he supervises are doing their contracted duties. Dr. Saukhla is one of the those doctors that Dr. Bick supervises." (Dkt. No. 28 at 3.) In addition, review of plaintiff's supporting documents indicates that Dr. Bick reviewed two of plaintiff's administrative appeals at the Second Level, in his capacity as CMF's Chief Deputy of Clinical Services.[7]

---

[7] On June 23, 2009, Dr. Bick "granted" one of plaintiff's unexhausted grievances (Log No. 09-10812), pursuant to the Second Level Response, based on a summary of plaintiff's care to date, and a finding that "[y]our PCP has provided you professional health care consistent with your symptoms as presented by you." (Dkt. No. 1 at 44-45.)

On June 29, 2010, Dr. Bick "partially granted" plaintiff's exhausted grievance (Log No. 10-10637), pursuant to the Second Level Response, on the ground that Dr. Wills had already

Supervisory personnel cannot be held liable under Section 1983, for the actions of their subordinates, under a theory of respondeat superior. When a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged, based on facts other than the supervisory relationship. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under Section 1983 based on a theory of supervisory liability, plaintiff must allege some facts that would support a claim that the supervisory defendant personally participated in the alleged deprivation of constitutional rights; actually knew of the alleged violations and failed to act to prevent them; or "implemented a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (citations and internal quotation marks omitted); see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Plaintiff's claim against Dr. Bick, based on a theory of respondeat superior, fails due to the absence of any alleged any causal link between Dr. Bick and the alleged constitutional violations committed by Dr. Saukhla.

To the extent that Dr. Bick was directly involved in decisions concerning plaintiff's care, based on his Second Level reviews of two of plaintiff's administrative grievances, the court also finds no cognizable claim. In general, a defendant's participation in the administrative review or denial of a plaintiff's inmate appeal does not give rise to a cause of action, particularly one premised on due process. See e.g. Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988) (no constitutional right to an inmate appeal or grievance process); Lewis v.

---

submitted a Physician Request for Service for orthopedic consultation regarding both of plaintiff's shoulders. (Dkt. No. 1 at 11.) In addition, Dr. Bick "granted" plaintiff's request for a thorough review of his medical treatment, tailored to plaintiff's specific inquiry concerning treatment for his shoulders, made pursuant to his request for Second Level Review. Dr. Bick summarized plaintiff's care to date, and noted that plaintiff had received a "stepwise workup for your right shoulder," and an emergency x-ray of his left shoulder, for which plaintiff was seen by Dr. Wills three times within the preceding month. (Id.)

1  Ollison, 571 F. Supp. 2d 1162, 1170 (C.D. Cal. 2008); Buckley v. Barlow, 997 F.2d 494, 495
2  (8th Cir. 1993).  Moreover, in the present case, does the court find a cognizable Eighth
3  Amendment claim based on the substantive content of Dr. Bick's responses to plaintiff's
4  administrative grievances.  On the contrary, Dr. Bick "granted" or "partially granted" each of
5  these appeals, based on a comparison of plaintiff's complaints with thorough assessments of his
6  actual care, and a finding that plaintiff's care had been appropriate.  Plaintiff has made no
7  allegations to suggest that Dr. Bick's findings were unreasonable.
8  　　　　　Therefore, the court recommends that defendants' motion to dismiss plaintiff's
9  complaint, as to defendant Bick, also be granted.

10  IV.  Conclusion
11  　　　　　Review of the complaint and supporting documents, as well as plaintiff's
12  opposition to the pending motion, demonstrate that the deficiencies of the complaint cannot be
13  cured by amendment.  Therefore, defendants' motion to dismiss should be granted, and this
14  action should be dismissed with prejudice.
15  　　　　　Accordingly, IT IS HEREBY ORDERED that:
16  　　　　　1. Plaintiff's motion to lodge additional documents (Dkt. No. 33), is granted; and
17  　　　　　2. The Clerk of Court is directed to randomly assign a district judge to this action.
18  　　　　　Additionally, for the foregoing reasons, IT IS HEREBY RECOMMENDED that:
19  　　　　　1. Defendants' motion to dismiss (Dkt. No. 24) be granted;
20  　　　　　2. This action be dismissed, with prejudice; and
21  　　　　　3. Judgment be entered for defendants Saukhla and Bick.
22  　　　　　These findings and recommendations are submitted to the United States District
23  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 21 days
24  after being served with these findings and recommendations, any party may file written
25  objections with the court and serve a copy on all parties.  Such a document should be captioned
26  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

objections shall be filed and served within 14 days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 17, 2012

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

marp0387.mtd